*1451
 
 RICH, Circuit Judge.
 

 Plaintiff-Appellant Slimfold Manufacturing Company, Inc. (Slimfold) and Defendants/ Cross-Appellants Kinkead Industries, Inc. and United States Gypsum Company (collectively Kinkead) appeal from the May 29, 1990 Orders of the United States District Court for the Northern District of Georgia, Civil Action No. 78-CV-1798, finding Slimfold to be entitled to treble damages and attorney fees, but denying Slim-fold’s application for attorney fees. We affirm-in-part, reverse-in-part, and remand.
 

 BACKGROUND
 

 Slimfold is the owner of U.S. Patent No. Re. 31,553 (Ford), reissued on April 17, 1984 and entitled “Pivot and Guide Rod Assembly for Bi-Fold Door.”
 
 [1]
 
 The invention of the Ford patent is disclosed specifically for use with
 
 metal
 
 bi-fold doors, which are the folding doors commonly used for closets and cabinets. In such doors, one end of the door is pivotally attached to the door frame, while the other end of the door has a “pivot rod assembly” attached thereto which has a head portion or “hat” which slides within a track formed in the door frame as the door is opened and closed. As the district court found, the invention of the Ford patent is an improved “cartridge-type” pivot rod assembly which is advantageous over the prior art assemblies which were cumbersome, had many more parts, and were difficult to install.
 

 An example of the improved pivot rod assembly of the Ford patent is shown below. As seen therein, the assembly is made up of a plastic sleeve 30 in which a pivot rod 48 is moveable. The sleeve extends downwardly through two holes formed in a stiffening channel of the door, the top flange of which is shown at 18. A head portion 50 attached to one end of the pivot rod is biased upwardly by spring 66. At the top of the sleeve 30 is an integral collar 26. Extending downwardly from the collar is a finger 42 which engages the top edge of a hole 44 formed in the stiffening channel of the door. Extending upwardly from the collar is a latch 64 which engages a lip 60 formed along the edge of the head portion by a peripheral notch 62. The purpose of the latch is to hold the head portion in a retracted position (against the force of the spring) during assembly, shipment, and installation of the door. When the door is installed, the bottom of the pivot rod is struck by a hammer, causing the latch to flex and disengage from the lip, thus allowing the spring to press the head portion upwardly into the door track.
 

 [[Image here]]
 

 Claim 1 of the Ford patent reads as follows:
 

 1. In a metal door assembly:
 

 a door panel comprising a face sheet,
 

 a stiffening channel secured to one surface of said sheet along an edge
 
 *1452
 
 thereof, said channel having a pair of spaced apart flanges extending outwardly from said surface and a connecting web,
 

 a pivot rod assembly mounted in said channel, said assembly comprising
 

 an elongated plastic sleeve extending through corresponding openings in said flanges,
 

 a collar on said sleeve,
 

 sleeve retaining means operatively arranged between said sleeve and said channel to retain said sleeve in said channel,
 

 a pivot rod having a shank portion positioned in said sleeve and slidable therein and an enlarged head portion,
 

 a compression spring operatively arranged between said channel and said head portion for urging said head portion away from said channel,
 

 and releasable latch means opera-tively arranged between said head portion and said sleeve for releasably retaining said head in a retracted position adjacent said collar.
 

 In 1976, after becoming aware of Slim-fold’s new pivot rod assembly, Kinkead instructed its engineers to produce a similar assembly. The result was what is referred to in this case as Kinkead’s “Type I door.” The Type I door was almost identical to Slimfold’s door, although it had a number of minor improvements. The primary difference was in the latching mechanism; in the pivot rod assembly of the Type I door, the lip extended only part way around the circumference of the head portion, instead of all of the way around as in Slimfold’s door, and the bottom of the pivot rod was provided with a knurled surface. The advantage of this design was that the latch mechanism could be released simply by rotating the pivot rod, instead of having to strike it as was required with Slimfold’s assembly. Kinkead began selling its Type I door in June of 1977.
 

 In April of 1978, some months after becoming aware of the Ford patent, Kinkead abandoned their Type I door and began making what has been termed their “Type II door.” In the pivot rod assembly of the Type II door, the latch formed on the collar was removed. In order to hold the pin in a retracted position during shipment and assembly, Kinkead employed a styrofoam wedge which was placed between the lower part of the pivot rod and the inside of the facing sheet of the door. Kinkead sold the Type II door until December of 1979.
 

 The district court found that Kinkead’s Type I door literally infringed claim 1 of the Ford patent, and that the Type II door infringed claim 1 under the doctrine of equivalents. However, the district court further found that Slimfold had not sufficiently proved entitlement to damages based on lost profits, and thus awarded as damages the sum of (1) all of Kinkead’s cost savings realized in making the infringing doors (since the pivot rod assemblies covered by the Ford patent were cheaper to produce and install), and (2) a reasonable royalty of 0.75% of the price of the entire doors. The district court found that Slimfold did not provide Kinkead with actual notice of infringement prior to the time Slimfold began marking their doors in November of 1977, and so did not begin the damages period until that date.
 

 The district court also found Kinkead’s infringement to be willful and held that Slimfold was entitled to treble damages under 35 U.S.C. § 284 and attorneys fees under 35 U.S.C. § 285. However, in a separate order issued the same day, the district court found Slimfold’s application for attorney fees to be deficient. Thus, the district court provisionally denied Slimfold any award of attorney fees but granted leave to Slimfold to refile their fee application within 30 days provided that they agreed to charge no fees for preparation of the first fee request and to an offset of Kinkead’s cost in replying to the first fee request. The order concluded with a statement that “[i]f these conditions are unsatisfactory to the movant, then the movant may consider this denial a final order and take its appeal.”
 

 Slimfold chose to appeal. In addition to contesting the denial of attorney fees, Slim-fold argues on appeal that the district court erred in refusing to award lost profits, in
 
 *1453
 
 finding that 0.75% was a reasonable royalty, and in not starting the damages period until November of 1977. Kinkead has cross-appealed, arguing that the district court erred in finding that the Type II door infringed under the doctrine of equivalents, in finding its infringement to be willful, in finding Slimfold was entitled to attorney fees, and in awarding prejudgment interest.
 

 OPINION
 

 A.
 
 Infringement by the Type II Door
 

 As the district court correctly found, the Type II door meets every limitation of claim 1
 
 except
 
 for the last one, i.e., the requirement of a
 
 “releasable latch means operatively arranged between said head portion and said sleeve
 
 for releasably retaining said head in a retracted position adjacent said collar” (emphasis added). Thus, the sole question with respect to infringement is whether a pivot rod assembly which uses a separate removable styro-foam wedge to hold the pivot rod in the retracted position is equivalent to one which has the latch means recited above.
 

 The district court, as evidenced, for example, by the language on page 13 of its opinion, appears to have been overly concerned with the fact that the Type II door was deliberately designed to avoid infringement of the Ford patent. Intentional “designing around” the claims of a patent is not by itself a wrong which must be compensated by invocation of the doctrine of equivalents. Designing around patents is, in fact, one of the ways in which the patent system works to the advantage of the public in promoting progress in the useful arts, its constitutional purpose. Inherent in our claim-based patent system is also the principle that the protected invention is what the claims say it is, and thus that infringement can be avoided by avoiding the language of the claims.
 
 See generally, Texas Instruments, Inc. v. U.S.I.T.C.,
 
 805 F.2d 1558, 1572, 231 USPQ 833, 841-42 (Fed.Cir.1986). It is only when the changes are so insubstantial as to result in “a fraud on the patent” that application of the equitable doctrine of equivalents becomes desirable.
 
 Id.; Graver Tank & Mfg. Co. v. Linde Air Products Co.,
 
 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 85 USPQ 328, 330 (1950).
 

 Thus, the first question which must be asked is “has a substantial change been made?” Only if the answer to that question is “no” should an accused infringer be liable for improperly trying to appropriate the claimed invention. This is where the
 
 Graver Tank
 
 tripartite test comes into play; the differences between an accused device and a claimed device are considered to be insubstantial only when the accused device performs substantially the same function
 
 in substantially the same way
 
 to achieve substantially the same result as the claimed device. The determination of whether an accused device meets this strict test is one of fact.
 
 See Sun Studs Inc. v. ATA Equipment Leasing Inc.,
 
 872 F.2d 978, 986, 10 USPQ2d 1338, 1345 (Fed.Cir.1989).
 

 In the present case, as often happens in doctrine of equivalents cases, there is no material dispute about the “function” and the “result” prongs of the test. Both the claimed pivot rod assembly and the corresponding but different assembly of the Type II door have
 
 a means
 
 which engages the pivot rod so as to hold it in a retracted position during shipment and assembly. The question is whether they do so in substantially the same way. We are convinced that the district court’s finding that they do is clearly erroneous.
 

 First of all, we note that the claimed invention is a mechanical combination in a crowded field (a total of 34 patents are listed on the reissue application as having been considered by the examiner). Such an invention is entitled only to a narrow scope of equivalents.
 
 See Sun Studs,
 
 872 F.2d at 987, 10 USPQ2d at 1346. Furthermore, the Kinkead styrofoam wedge operates in a substantially different way from the claimed latching means, which Kinkead has eliminated. The wedge is a separate piece, placed at the lower part of the assembly. It acts as a friction device, not only between the pivot rod and the
 
 *1454
 
 sleeve, but also the facing sheet of the door. The claimed latching means, on the other hand, is indeed a latch which acts between the upper part of the sleeve and the head portion of the pivot rod. As its name implies, the latching means
 
 latches,
 
 i.e.,
 
 grabs onto
 
 the head portion of the pivot rod. A latch and a wedge, applied in different locations, have very different modes of operation and we are left with a firm conviction that Kinkead’s modification with respect to the Type II door results in a device which does not operate in substantially the same way, and thus was sufficient to avoid infringement under the doctrine of equivalents. It does not meet the
 
 Graver
 
 test. Accordingly, the district court’s finding to the contrary is reversed. The Type II door is not an infringement.
 

 B.
 
 Damages
 

 Having reversed the finding of infringement with respect to the Type II door, our analysis of damages is limited to whether the district court committed any reversible error with respect to Type I door infringement.
 

 The district court denied Slimfold’s claim for damages based on lost profits because it found that Slimfold had failed to establish (1) the lack of acceptable non-infringing substitutes, and (2) the amount of profit Slimfold would have made. Since we do not consider the first finding to be clearly erroneous, we need not and do not reach the second.
 

 With respect to the availability of acceptable non-infringing substitutes, the district court found that:
 

 [I]t is not established at all that the alleged infringer would not have made a substantial portion or the same number of sales had it continued with its old hardware or with the hardware utilized by any of the other companies.
 

 Slimfold contends that the old hardware used by Kinkead and other companies cannot be acceptable non-infringing alternatives because they do not have the advantages of the new hardware covered by the Ford patent. That proposition may be correct if it is shown that consumers specifically want a device with those advantages.
 
 See TWM Mfg. Go. v. Dura Corp.,
 
 789 F.2d 895, 901, 229 USPQ 525, 529 (Fed.Cir.),
 
 cert. denied,
 
 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986). However, not only has Slimfold failed to show that
 
 buyers
 
 of bi-fold metal doors specifically want a door having the advantages of the Ford patent, but the fact (found by the district court) that neither Slimfold’s nor Kinkead's market share changed significantly after introduction of the “new” doors is very probative of the contrary conclusion.
 

 Slimfold also argues that this case is indistinguishable from
 
 State Industries Inc. v. Mor-Flo Industries Inc.,
 
 883 F.2d 1573, 12 USPQ2d 1026 (Fed.Cir.1989),
 
 cert. denied,
 
 — U.S. -, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990), and that the district court erroneously failed to award lost profits based on market share, as was done in
 
 State Industries.
 
 However, there is a critical difference between that case and the present one. In
 
 State Industries,
 
 we held that the
 
 grant
 
 of lost profits based on market share was not an abuse of discretion.
 
 Id.
 
 at 1577-78, 12 USPQ2d at 1028-29. However, that holding does not mean that the contrary is true, i.e., that the
 
 failure
 
 to award lost profits based on market share
 
 would constitute
 
 an abuse of discretion. We hold that such a failure to award lost profits in the present case was not an abuse of discretion.
 

 Next, Slimfold assigns error to the district court’s determination that 0.75% was a reasonable royalty. First, we point out that the 0.75% royalty was not the only damages which the district court awarded; the district court also awarded all profits that Kinkead realized in the form of manufacturing cost savings. This amount must be taken into account in determining whether Slimfold has been awarded “less than a reasonable royalty.”
 
 See
 
 35 U.S.C. § 284 (1988).
 

 Further, we do not agree with Slimfold, as alleged in their brief at page 26, that the district court “inferentially adopted the entire market [value] rule by using the entire value of the infringing door as the basis for
 
 *1455
 
 calculating the royalty amount."
 
 [2]
 
 In fact, the contrary appears to be true; i.e., that the district court awarded such a small royalty rate because the advantage of the Ford invention was primarily a manufacturing advantage (for which the district court awarded damages separately) and did not greatly increase the value of the entire door. It is most likely that the district court used the entire door as the basis for the royalty award simply because the claims of the Ford patent are themselves directed to the entire door. In any event, we do not consider the award of damages to constitute an abuse of discretion.
 

 Finally, Slimfold claims that the district court erred in finding that Kinkead did not have notice of the Ford patent prior to November 1, 1977. We do not consider this finding to be clearly erroneous.
 

 C. Willfulness and Attorney Fees
 

 Kinkead claims that the district court erred in finding its infringement to be willful and in finding the case to be "exceptional," and thus subject to the award of attorney fees under 35 U.s.c. § 285. These are both questions of fact, subject to the clearly erroneous standard of review. See State Industries, 883 F.2d at 1581, 12 USPQ2d at 1032 (willfulness is a question of fact); Reactive Metals and Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582-83, 226 USPQ 821, 824 (Fed.Cir.1985) (exceptional nature of case question of fact).
 

 There is sufficient evidence in the record to support a finding of willfulness with respect to Type I infringement alone. Furthermore, the existence of willful infringement alone can justify a finding of exceptional circumstances. Ryco Inc. v. Ag-Bag Corp., 857 F.2d 1418, 1429, 8 USPQ2d 1323, 1332 (Fed.Cir.1988). However, the district court's incorrect assumption that Kinkead did not avoid infringement when they developed the Type II door certainly influenced its findings concerning willfulness and the exceptional nature of the case. Therefore, we direct the district court on remand to re-determine whether the facts of this case, in light of our holding of no infringement with respect to the Type II door, still merit a finding of willfulness and a finding of "exceptional case" under 35 U.S.C. § 285.
 

 Assuming the district court still finds the case to be exceptional, we urge the district court to reconsider its position on the adequacy of the attorney fee documentation. "[I]nsufficient documentation may warrant a reduction in fees." PPG Industries Inc. v. Celanese Polymer Specialties Co. Inc., 840 F.2d 1565, 1570, 6 USPQ2d 1010, 1015 (Fed.Cir.1988) (emphasis added). See also Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). But "[w]here documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee. . . ." Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1303 (11th Cir.1988). In fact, the Norman case recognizes that a district court itself has experience in determining what are reasonable hours and reasonable fees, and should rely on that experience and knowledge if the documentation is considered inadequate. Id. Further, while Slimfold's fee application certainly had its flaws, it is fairly detailed and extensive, and we note the Supreme Court's admonition that an attorney fees determination "should not result in a second major litigation." Hensley, 461 U.S. at 437, 103 S.Ct. at 1941.
 

 Finally, if the district court determines that the case is still exceptional, the district court must take into account, in determining the amount of fees to be awarded, the extent to which Slimfold, having lost on the Type II door infringement issue, can be considered a "prevailing party" under 35 U.S.C. § 285. See Beckman Instruments Inc. v. LKB Produkter AB, 892 F.2d 1547, 1553-54, 13 USPQ2d 1301, 1306-07 (Fed.
 
 *1456
 
 Cir.1989);
 
 see also, Hensley,
 
 461 U.S. at 433, 103 S.Ct. at 1939.
 

 CONCLUSION
 

 The decision of the district court is reversed insofar as it held that Kinkead’s Type II door infringed the Ford patent. The case is remanded for further proceedings consistent with this opinion.
 

 COSTS
 

 Each party to bear its own costs.
 

 AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED.
 

 [1]
 

 . The Ford patent is a reissue of U.S. Patent No. 3,810,274, issued May 14, 1974. The reissue proceedings took place after commencement of the present suit. In
 
 Slimfold Mfg. Co. v. Kinkead Industries Inc.,
 
 810 F.2d 1113, 1 USPQ2d 1563 (Fed.Cir.1987), this court affirmed the district court’s finding that the minor change made to claim 1 of the Ford patent during reissue was not sufficient to give rise to intervening rights.
 

 [2]
 

 . The entire market value rule allows a patentee to recover damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand. See State Industries, 883 F.2d at 1580, 12 USPQ2d at 1031; TWM Mfg., 789 F.2d at 901, 229 USPQ at 528.