**SCRIPTO–TOKAI CORPORATION,**
**Plaintiff,**

**v.**

**The GILLETTE COMPANY, Defendant.**

**No. CV 91–2862 WJR (JRx).**

United States District Court,
C.D. California.

March 20, 1992.

Allan N. Littman, John Randolph Haag, John O'Hara Horsley, Pillsbury, Madison & Sutro, Gene W. Arant, Arant, Kleinberg & Lerner, Los Angeles, Cal., for plaintiff.

John E. Nathan, Patricia A. Martone, Thomas J. Vetter, John M. Desmarais, Debra A. Bontempo, Fish & Neave, New York City, James J. Mittermiller, Kent R. Raygor, Janet R. Rich, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for defendant.

## MEMORANDUM AND ORDER

REA, District Judge.

This is a declaratory judgment action to clarify counter-plaintiff The Gillette Company's ("Gillette's") right to recover damages, in its counterclaim for patent infringement, against counter-defendant Scripto–Tokai Corporation. Counter-defendant Scripto–Tokai Corporation is the successor by merger to Scripto, Inc.

The counter-defendant's motion to clarify Gillette's right to recover damages came on regularly for hearing before the Court on March 2, 1992. After full consideration of the documented evidence and authorities submitted by the parties, and oral argument of counsel, Scripto–Tokai Corporation's motion is hereby denied.

## BACKGROUND

The instant action involves a patent dispute concerning erasable inks for ball point pens.

Gillette pioneered and patented two erasable ink technologies. The first technology contains rubber ("rubber-based ink"). In 1979, Gillette marketed an erasable ink pen using the rubber-based ink. By mid–1980, Scripto, Inc. (a predecessor of Scripto–Tokai, Corporation) entered the market to compete against Gillette with a rubber-based erasable ink pen. Litigation between the companies ensued, and was settled in 1981. As part of that settlement, Scripto, Inc. took a non-exclusive license under Gillette's rubber-based erasable ink patent. This is not at issue here.

Gillette's second patented technology contains thermoplastic block copolymers ("block copolymer-based ink"). Gillette has never marketed erasable pens containing the block copolymer-based ink. Scripto, Inc., and later Scripto–Tokai Corporation (collectively "Scripto"), marketed erasable pens that were filled with block copolymer-based ink. The patents for the block copolymer-based ink are at issue in the instant action.

Both Gillette and Scripto have patents for erasable inks containing thermoplastic block copolymers. However, Gillette alleges that the block copolymer-based ink formula contained in the erasable pens sold by Scripto is covered by patents owned by Gillette.

During the period of alleged infringement, Scripto and Gillette were the only two participants in the erasable ink pen

market. While Scripto used block copolymer-based technology for the erasable ink in its pens, Gillette used its patented rubber-based technology for the erasable ink in the pens it sold. Scripto sold its block copolymer-based erasable ink pens in direct competition with Gillette's rubber-based erasable ink pens.

Scripto brought this action for declaratory relief seeking a determination that the two patents owned by Gillette for "Erasable Inks Containing Thermoplastic Block Copolymer," (U.S. Letters Patents Nos. 4,390,646 (Ferguson) and 4,391,927 (Farmer)), are invalid, unenforceable, and not infringed by Scripto. Gillette has counterclaimed alleging that Scripto infringed those patents, and claims damages for lost profits ranging from 20 million to 40 million dollars.

In the instant action, Scripto has moved for an order clarifying the rights of Gillette to recover damages on its counterclaim. Scripto alleges that, because Gillette never has marketed pens containing the ink covered by the patents-in-suit, (i.e., the block copolymer-based ink), any recovery by Gillette should be limited to reasonable royalties. Further, Scripto claims that the fact that Gillette exploits the relevant market by selling a product not covered by the patents-in-suit precludes the award of lost profits.

## DISCUSSION

Counter-defendant Scripto has moved this Court for an Order precluding Gillette, as a matter of law, from claiming or recovering damages for lost profits on its counterclaim for patent infringement. Scripto makes this motion to clarify issues pursuant to Rule 16(c)(1) of the Federal Rules of Civil Procedure, which provides that participants at a pretrial conference may take action with respect to simplification of the issues.

Scripto advances two arguments in its attempt to establish, as a matter of law, that Gillette's right to recover damages is limited to reasonable royalties. First, Scripto argues that Gillette is precluded by law from recovering lost profits damages because it has never commercially exploited the patents-in-suit. Second, Scripto argues that Gillette is precluded from seeking lost profits damages because rubber-based erasable inks were acceptable noninfringing substitutes for the patented inks.

*A.  A Patent Owner Is Not Precluded From Recovering Lost Profits From the Infringement Of Its Patent By The Fact, Alone, That The Patent Owner Has Not Marketed A Product Covered By The Patent.*

The standard for damages for patent infringement is set forth in § 284 of the Patent Act. Section 284 provides that a patent owner whose patent has been infringed is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.

■ To be entitled to damages beyond a reasonable or established royalty, a claimant must prove his actual damages caused by the illicit competition of an infringer. *Water Technologies Corp. v. Calco Ltd.*, 850 F.2d 660, 671, 7 U.S.P.Q.2d 1097, 1106 (Fed.Cir.1988). The owner must establish a factual basis for causation, i.e., that but for the infringer's improper acts, he would have made greater sales, charged higher prices or incurred lower expenses. *Id.; see also, Lam, Inc. v. Johns–Manville Sales Corp.*, 718 F.2d 1056, 1065, 219 U.S.P.Q. 670, 675, (Fed.Cir.1983). Causation need be proved only as a reasonable probability. *Id.; Water Technologies Corp.*, 850 F.2d at 671, 7 U.S.P.Q.2d at 1106.

■ Where the patent owner and the infringer were the only suppliers of a unique and demanded product, and the owner had or could have acquired the capacity to meet the full demand, an inference that the patent owner lost sales equal in quantity to those actually made by the infringer may arise. *Water Technologies*, 850 F.2d at 671, 7 U.S.P.Q.2d at 1106 (summarizing 5 D. Chisum, Patents § 20.03[1], at 20–72, and judicial precedent, citations

omitted). Moreover, when the amount of the damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer. *Lam,* 718 F.2d at 1065, 219 U.S.P.Q. at 675.

■ Scripto asserts incorrectly that Federal Circuit precedent has established, as a rule of law, that a patent owner is barred from recovering lost profits damages, if it did not market the patented product during the period of the alleged infringement. Scripto relies on three Federal Circuit cases in which the patentee was denied lost profits damages. However, these cases do not support Scripto's position. In none of these cases, was the patentee participating in the market in competition with the patent infringer. In *Water Technologies Corp. v. Calco Ltd.,* 850 F.2d 660, 672, 7 U.S.P.Q.2d 1097, 1107 (Fed.Cir.1988), the patentee did not manufacture any product or compete for any sales during the period of alleged infringement. (And the licensee was denied lost profits damages because it failed to prove that it would have made sales "but for" the infringement.) In *Lindemann Maschinenfabrik Gmbh v. American Hoist & Derrick Co.,* 895 F.2d 1043, 13 U.S.P.Q.2d 1871 (Fed.Cir.1990), the patentee did not sell in the United States and admitted having no actual damages. And in *Trell v. Marlee Electronics Corp.,* 912 F.2d 1443, 16 U.S.P.Q.2d 1059 (Fed.Cir. 1990), the patentee was an inventor in the business only of selling licenses under his various patents.

Scripto does refers to one district court decision, *Trilogy Communications, Inc. v. Comm Scope Co.,* 754 F.Supp. 468, 18 U.S.P.Q.2d 1177 (W.D.N.C.1990), where the patent owner exploited the relevant market, but was denied lost profits damages on its competing products not covered by the patent-in-suit. There, the court stated:

"[t]he Court has found no authority holding a patentee who does not practice the invention claimed in its patent is entitled to lost profits from alleged infringement of its patents. There are several cases which hold or imply that such alleged profits are not recoverable under these circumstances."

*Id.* at 511, 18 U.S.P.Q.2d at 1212. The *Trilogy* court cited four cases, none of which support its stated position. In one case, *Velo–Bind, Inc. v. Minnesota Mining and Mfg. Co.,* 647 F.2d 965, 211 U.S.P.Q. 926, 928 (9th Cir.1981), the patent-in-suit was for a machine that binds books and documents by compressing together two plastic strips using a "hot knife" process. The patentee claimed damages for lost profits on sales of the patented machine, and additionally, on sales of unpatented plastic strips, paper, and book and document covers used in making books. The court held that the patentee could not recover lost profits on lost future sales of the unpatented, consumable supplies, because a patentee may not tie the use of its patent to the sale of other unpatented products. *Id.* at 972, 211 U.S.P.Q. at 933. In the second case cited by the *Trilogy* court, *Trio Process Corp. v. L. Goldstein's Sons, Inc.,* 533 F.2d 126, 189 U.S.P.Q. 561, 562 (3d Cir.1976), the infringed patent was for a technique of salvaging copper from scrap wire. The court held that, because the patentee was not, itself, engaged in the metal reclaiming business, the only damage the patentee suffered was the loss of the royalties it would have received if the infringer's use of the process had been made under an appropriate license agreement. *Id.* at 129, 189 U.S.P.Q. at 563. Similarly in the third cited case, *Ellipse Corp. v. Ford Motor Co.,* 461 F.Supp. 1354, 201 U.S.P.Q. 455 (N.D.Ill.1978), the patentee manufactured no products at all during the period of infringement, leading the district court to conclude that the patentee was entitled only to a reasonable royalty and not lost profits. The court noted, "[the patentee] asserts no lost sales, lost profits or any other competitive injury, as a result of the infringement." *Id.* at 1360, 201 U.S.P.Q. at 460. And, in the fourth case relied upon by the *Trilogy* court, *Saf–Gard Product, Inc. v. Service Parts, Inc.,* 491 F.Supp. 996, 1001, 206 U.S.P.Q. 976, 985– 987 (D.Ariz.1980), the patentee was competing in the relevant market, and was awarded its lost profits. Hence, the cases relied upon by the *Trilogy* court do not address the situation where a patentee directly

competes in the relevant market with the infringer, and is denied the opportunity to prove lost profits damages. Thus, the opinion by the *Trilogy* court is not persuasive.

Furthermore, the position taken by the *Trilogy* court, and by Scripto, is inconsistent with "Congress' overriding purpose [in enacting § 284] of affording patent owners complete compensation." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655, 103 S.Ct. 2058, 2062, 76 L.Ed.2d 211 (1983).

> "Congress sought to ensure that the patent owner would in fact receive full compensation for 'any damages' he suffered as a result of the infringement. See, H.R.Rep., [No. 1587, 79th Cong., 2d Sess., 1 (1946) ] ('any damages the complainant can prove'); S.Rep., supra, at 2, U.S.Code Cong.Serv.1946, p. 1387 (same)."

*General Motors Corp.*, 461 U.S. at 654–655, 103 S.Ct. at 2061–62.

In contrast, the district court's reasoning in *Rite–Hite Corp. v. Kelley Co., Inc.*, 774 F.Supp. 1514 (E.D.Wis.1991), is persuasive, as it is in accord with the legislative history and prior judicial interpretation of § 284. In *Rite–Hite*, the plaintiffs (collectively "Rite–Hite") had pioneered an entirely new vehicle restraint market. In so doing, Rite–Hite had invented and marketed two different patented vehicle restraint hook technologies, both of which achieved commercial success. Defendant Kelly, in developing his own vehicle restraint, had borrowed from only one of Rite–Hite's two patents, but had competed in sales with both of Rite–Hite's restraints. The court permitted Rite–Hite to recover lost profits on lost sales of both of its restraints—one type was covered by the patent-in-suit and one was not. The court said, "such an award of lost profits damages upholds the basic statutory purpose underlying § 284, which is to afford 'complete compensation' for infringement." *Id.* at 1540. Additionally, the court said:

> "In order to recover lost profits, 'a patentee must show a reasonable probability that, but for the infringement, it would have made the sales that were made by the infringer.' [*Del Mar Avionics Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed.Cir.1987) ]. The issue of whether a court should award lost profits damages or a reasonable royalty under § 284 thus turns primarily upon the quality of plaintiffs' proof of lost profits. Neither § 284 nor controlling case law restricts the recovery of lost profits damages any further."

*Id.* at 1537 (citations omitted).

The Federal Circuit has protected a patentee's right to prove and recover lost profits damages:

> "[W]e reject an interpretation of our precedent holding that a judge has 'discretion' to choose the 'methodology' in determining an award to mean that the judge may choose between basing an award on 'lost profits' damages or on a reasonable royalty. That is not choosing methodology. If a winning patentee seeks and proves lost profits, he is entitled to an award reflecting that amount."

*SmithKline Diagnostics, Inc. v. Helena Laboratories, Inc.*, 926 F.2d 1161, 1164 n. 2, 17 U.S.P.Q.2d 1922, 1925 n. 2 (Fed.Cir. 1991).

■ In summary, the instant action presents an unusual situation of alleged patent infringement in a two-supplier market, where the alleged infringer competed directly with the patent owner's product; and yet, the patent owner's product was covered by a second patent not in issue here. "When it is borne in mind that to allow a patent owner to recover lost profits from an infringer is no unique treatment of this one type of wrongdoing,"[1] the Court finds no reason to deny the patentee the opportunity to prove the damages he claims to have suffered as a result of the infringement. The Court recognizes no law precluding such a right.

**1.** *Livesay Window Co. v. Livesay Industries, Inc.*, 251 F.2d 469, 471, 116 U.S.P.Q. 167, 169 (5th Cir.1958).

### B. The Standard Set Forth In Panduit Does Not, As A Matter Of Law, Bar Gillette From Recovering Lost Profits Damages.

Scripto asserts that Gillette is precluded, as a matter of law, from seeking lost profits damages because rubber-based erasable inks were acceptable non-infringing substitutes for the patented ink. The Court does not agree.

■ A lost profits award requires (1) a showing that the patent owner would have made the sale but for the infringement, i.e., causation existed, and (2) proper evidence of the computation on the lost profits. *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 863, 226 U.S.P.Q. 402, 409 (Fed.Cir.1985).

■ A permissible way to meet the above requirements for entitlement to lost profits is by satisfaction of the four-part test set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156, 197 U.S.P.Q. 726, 729–730 (6th Cir.1978). To satisfy the *Panduit* test, the patentee must prove (1) a demand for the patented product, (2) an absence of acceptable noninfringing substitutes, (3) the marketing and manufacturing capability to exploit demand, and (4) the amount of profit the patentee would have made but for the infringement.

Although the Federal Circuit has accepted the *Panduit* standard as a permissible way to establish entitlement to lost profits, the Federal Circuit has not made the *Panduit* standard exclusive. *Bio–Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 616 n., 222 U.S.P.Q. 654, 663 n., (Fed.Cir.1984), cert. denied, 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984); *see also, King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 864 n. 9, 226 U.S.P.Q. 402, 409 n. 9 (Fed.Cir.1985); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 551, 222 U.S.P.Q. 4, 7 (Fed.Cir. 1984).

■ The *Panduit* test is only one means by which a patentee can show lost profits from infringement of its patent. *Kaufman Co., Inc. v. Lantech, Inc.*, 926 F.2d 1136, 1141, 17 U.S.P.Q.2d 1828, 1831–32 (Fed.Cir.1991). "When the patentee and the infringer are the only suppliers present in the market, it is reasonable to infer that the infringement probably caused the loss of profits." *Id.* (paraphrasing *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d at 1065, 219 U.S.P.Q. at 675 (Fed.Cir.1983)). Moreover, lost profits can take many forms. The *Panduit* test is concerned with lost profits due to lost sales. The Federal Circuit also recognizes lost profits due to price erosion, increased costs, damage to the market and impaired growth resulting from the infringement. *Id.* at 1065–68, 219 U.S.P.Q. at 675–677.

■ Importantly, the Federal Circuit has repeatedly held that a patentee need only prove its lost profits to a reasonable probability, and that uncertainties are resolved against the infringer. *See, e.g., Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326–27, 5 U.S.P.Q.2d 1255, 1260 (Fed.Cir.1987); *Lam, Inc.,* 718 F.2d at 1065, 219 U.S.P.Q. at 675.

■ In the instant action, Gillette alleges that, during 1983–84 and during 1988–89, Scripto commercially sold erasable pens filled with block copolymer-based ink in violation of patents owned by Gillette. Furthermore, Gillette alleges that Scripto's pens competed directly with Gillette's rubber-based erasable ink pen. As a consequence of the alleged infringement, Gillette claims damages for lost profits due to 1) lost sales of Gillette's rubber-based erasable ink pen; 2) erosion of the prices of Gillette's rubber-based erasable pen; 3) increased expenses for advertising and promotion of Gillette's rubber-based erasable ink pen; and 4) damage caused by Scripto to the erasable pen market. No law precludes Gillette from the opportunity to prove its claims.

Furthermore, even under the *Panduit* test, Gillette is not precluded from establishing entitlement to lost profits damages. Scripto contends that Gillette cannot satisfy the second element of the *Panduit* test, because Gillette has effectively admitted that rubber-based ink erasable pens were

acceptable noninfringing substitutes for the block copolymer-based ink pens. Scripto draws this conclusion based on 1) Gillette's assertion that rubber-based ink pens and block copolymer-based pens are part of the same "relevant market" and 2) Gillette's business decision to market rubber-based ink pens rather than the block copolymer-based ink pens.

However, Scripto misunderstands the second element of the *Panduit* test and its purpose. The underlying rationale for imposing this requirement is that if acceptable noninfringing substitutes existed, consumers may have purchased the substitutes, rather than the patent owner's product, even if the infringer had not been in the marketplace. If substitutes were available, a heavy burden is on the patent owner to prove that "but for" the infringement, the patentee would have made additional sales. Under the second element of *Panduit*, the issue is whether acceptable, noninfringing substitutes, in addition to the product sold by the patentee, were available to the consumers during the period of infringement. *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1579, 220 U.S.P.Q. 490, 494 (Fed.Cir.1983); *Kaufman Co., Inc. v. Lantech, Inc.*, 926 F.2d 1136, 1142, 17 U.S.P.Q.2d 1828, 1832. In the instant case, this is an issue of fact that still must be decided at trial.

Moreover, "[t]he mere existence of a competing device does not make that device an acceptable substitute." *TWM Manufacturing Co., Inc. v. Dura Corp.*, 789 F.2d 895, 901, 229 U.S.P.Q. 525, 529 (Fed.Cir. 1986). Scripto ignored the rubber-based ink pens, while it sold the patented block copolymer invention, and thus its acceptable substitute argument "must be viewed of limited influence." *Id.* at 902, 229 U.S.P.Q. at 529 (citing from *Panduit Corp.*, 575 F.2d at 1162 n. 9, 197 U.S.P.Q. at 734 n. 9).

## CONCLUSION

Scripto has failed to provide the Court with any viable legal reason why, at this time, the Court should limit Gillette's right of recovery to royalties only. A lost prof-

its award requires (1) a showing that the patent owner would have made the sale but for the infringement and (2) proper evidence of the computation on the lost profits. *King Instrument Corp. v. Otari Corp.*, 767 F.2d at 863, 226 U.S.P.Q. at 409. Gillette's lost profits damages depends on issues of fact to be determined at trial. The Court denies counter-defendant Scripto's motion for clarification of Gillette's rights of recovery.

IT IS SO ORDERED.