PRECOR INCORPORATED,
Plaintiff–Appellee,

v.

LIFE FITNESS, A DIVISION OF BRUNSWICK CORPORATION, LF Holdings L.P., and Mancuso/Equity Partnership No. 2 L.P. ("Life Fitness"), Defendants–Appellants,

and

LF HMG, INC., Defendant.

No. 00–1201, 00–1328.

United States Court of Appeals, Federal Circuit.

DECIDED: June 27, 2001.

Rehearing Denied July 24, 2001.

Before CLEVENGER, SCHALL, and BRYSON, Circuit Judges.

## DECISION

SCHALL, Circuit Judge.

Life Fitness, a division of Brunswick Corporation, LF Holding L.P., and Mancuso/Equity Partnership No. 2 L.P. ("Life Fitness") (collectively, "Life Fitness") appeal from the decision of the United States District Court for the Western District of Washington denying their motion for judgment as a matter of law ("JMOL") and for a new trial following a jury verdict in favor of Precor Incorporated ("Precor"). *Precor Incorp. v. Life Fitness*, No. C94–1586C (W.D.Wash. Dec. 21, 1999) (*"Precor I"*). The jury found that Life Fitness's Flex-Deck exercise treadmill infringed U.S. Design Patent No. D313,826 (the " '826 design patent"), assigned to Precor, and that claim 37 of U.S. Patent No. 5,382,207 (the " '207 patent"), directed to a specific exercise treadmill design and assigned to the Life Fitness division of Brunswick Corporation, is not supported by an earlier application filed in June of 1989 and therefore is invalid in light of prior art. Life Fitness also appeals the district court's award of attorney fees to Precor based on a finding that this was an exceptional case under 35 U.S.C § 285 and the jury's finding that Life Fitness violated Washington State unfair competition law. *Precor Incorp. v. Life Fitness*, No. C94–1586C (W.D.Wash. Feb. 2, 2000) (*"Precor II"*). We *reverse* the district court's denial of JMOL regarding the jury's finding that Life Fitness's FlexDeck infringes the '826 design patent, but we *affirm* the district court's denial of JMOL regarding claim 37's invalidity. We *vacate* and *remand* the district court's award of attorney fees so that it can redetermine the award of fees in light of our holding of no infringement by Life Fitness of the '826 design patent.

## DISCUSSION

### I.

#### A. *The '826 Design Patent*

The '826 design patent describes an ornamental design for an exercise treadmill. It depicts a treadmill with a front console, a column supporting the console, a hood covering the treadmill's motor, and a pair of handlebars. Figure 1 of the '826 design patent is shown below.

Life Fitness's FlexDeck is also an exercise treadmill, having a front console, a column supporting the console, a motor hood, and handlebars. The front console is centered above the column supporting the console, and the handlebars meet at the bottom-center of the console. The supporting column's surface is smooth, and the motor hood has rounded edges and is symmetrical about the supporting column. The handlebars are attached at the midway point of the treadmill's running surface.

In its instructions to the jury, the district court included its construction of the claimed design, noting four specific design elements as part of the protected ornamental design: (1) an inclined center column with a ribbed front surface; (2) an asymmetrically shaped center console; (3) hand rails that attach at the front of the center console and midway of the treadmill's frame; and (4) a rectilinear and asymmetrical motor hood. The jury found that the FlexDeck infringed the '826 design patent and that the infringement was willful. The jury awarded Precor $5.25 million in damages for Life Fitness's infringement. As noted, the district court denied Life Fitness's motion for JMOL of non-infringement, and, in the alternative, for a new trial. *Precor I*, slip op. at 1.

#### B. *The '207 Patent*

Life Fitness alleged that an exercise treadmill made by Precor infringed the '207 patent. The '207 patent issued from Application No. 07/686,906 filed in April of 1991 (the "April 1991 application"). The '207 patent is directed towards an exercise treadmill that has a deck underneath the treadmill's running surface that is supported by resilient members, also called elastomeric support members, that allow the deck to flex and absorb the shock resulting from someone running on the treadmill. '207 patent, col. 3, ll. 29–32.

The '207 patent's grandparent, Application No. 07/368,450, was filed on June 19, 1989 (the "June 1989 application"). The June 1989 application described the use of resilient members that permitted the deck to flex when stepped on. The June 1989 application included three drawings that also are part of the '207 patent, figures 3A, 3B, and 3C. Figures 3A and 3B are shown below.

Figure 3A is a top view of the first third of the treadmill's running surface, with the front belt pulley 22 of the treadmill, which pulls belt 20, shown in the middle of the far left portion of the figure. Figure 3B is a top view of the middle third of the treadmill's running surface. The figures depict resilient members 102 at the end of the treadmill's running surface, seen in figure 3A, resilient members 100 under the deck 50, seen in figure 3B, and linkage assembly 134 and 136 at the front of the running surface that helps attach the deck 50 to crossbar 58 on the treadmill's frame, seen in figure 3A. Life Fitness filed a continuation-in-part to the June 1989 application on December 19, 1989, Application No. 07/452,885 (the "December 1989 application"), and then abandoned the June 1989 application.

On April 17, 1991, Life Fitness filed the April 1991 application as a continuation-in-part to the December 1989 application, and then the December 1989 application was abandoned. The April 1991 application, which became the '207 patent, discloses both resilient members 100 and 102 and the linkage assembly 134 and 136, all shown in figures 3A, 3B, and 3C, figures that are identical to those contained in the June 1989 and December 1989 applications. The '207 patent notes that the treadmill's frame has "a pair of laterally spaced longitudinal support members 54 and 56 that in turn are each secured to a set of parallel crossbars 58, 60, 62, and 64" that helped support the deck 50, as can be seen in figures 3A and 3B above. '207 patent, col. 8, II. 48–52. The patent continues, noting that "[d]eck 50 is also supported by array of resilient members 100

mounted on crossbars 60 and 62 and at each end by a set of resilient member 102 mounted to crossbars 58 and 64. Through the use of the resilient members 100 and 102, the deck 50 is permitted to flex when stepped upon, resulting in lower impact loads on the user's feet." *Id.* at col. 8, I. 65—col. 9, I. 7. The '207 patent-also describes the linkage assembly 134 and 136, indicating that it provides "additional flexure and [permits] forward movement of the deck 50 during operation of the treadmill." *Id.* at col. 12, II. 46–47.

The '207 patent introduces an alternative to the linkage assembly 134 and 136 which was not described in either the June 1989 or December 1989 application. *Id.* at col. 12, II. 46–68. This alternative to the linkage assembly is seen in figure 3D, shown below, a figure that did not appear in the June 1989 or December 1989 applications.

FIG. 3D

Figure 3D depicts the use of a elastomeric member 400 mounted between the deck 50 and frame crossbar 402 as an alternative to the linkage assembly 134 and 136. *Id.* at col. 12, II. 48–56. The '207 patent indicates that this alternative is a simpler and preferred method for allowing deck flexure. *Id.*

The '207 patent includes claim 37, a claim that did not appear in the June 1989 or December 1989 application. Life Fitness initially asserted that Precor infringed all 39 of the '207 patent's claims, but chose to only assert claim 37 at trial. Claim 37 reads:

An exercise treadmill, comprising:

a frame structure including two rotatable pulleys, said pulleys being positioned substantially parallel to each other, and two laterally spaced apart longitudinal support members;

means for rotating one of said pulleys;

an endless, moveable surface looped around said pulleys to form an upper run and a lower run, said movable surface being rotated when one of said pulleys is rotated, and providing an exercise surface on which a user can walk or run while exercising;

a deck member secured beneath at least a portion of said upper run;

a first plurality of elastomeric support members aligned with a first of said longitudinal support members and positioned intermediate of said pulleys; and

a second plurality of elastomeric support members aligned with a second of said longitudinal support members and positioned intermediate of said pulleys;

wherein said elastomeric support members are secured between said frame and said deck to permit said deck to flex downwardly in response to the impact of the user's feet on said exercise surface.

*Id.* at col. 26, II. 40–65.

Precor argued the claim 37 was not entitled to the June 1989 application's filing date because it was not supported by the June 1989 application. Precor alleged that without the June 1989 priority date, claim 37 of the '207 patent was anticipated by an intervening reference. Life Fitness agreed that if claim 37 was not entitled to the benefit of the June 1989 application's filing date, it was invalid. The issue of whether claim 37 was entitled to a June 1989 priority date was submitted to the jury. The district court construed some of the terms in claim 37, in particular, construing "aligned with" to mean "placed in line with," and gave this construction to the jury. The jury found that claim 37 of the '207 patent was not supported, pursuant to 35 U.S.C. § 112, ¶ 1, by the June 1989 application and that consequently it did not enjoy the earlier filing date and therefore was invalid. Life Fitness moved for JMOL on the priority date of claim 37, and, in the alternative, for a new trial. The district court denied the motion. *Precor I*, slip op. at 1–2.

C. *Attorney Fees*

Precor also alleged that Life Fitness had engaged in unfair competition by threatening Precor dealers with allegations of in-

fringement and Precor's financial instability. This issue was tried to the jury, and the jury found that Life Fitness violated both Federal and Washington State unfair competition law.[1] The jury awarded no damages for these violations, however.

After the jury's verdict, Precor moved for attorney fees under 35 U.S.C. § 285 and Washington State unfair competition law, R.C.W. 19.86.090. The district court found the case exceptional under 35 U.S.C. § 285 based on the jury's finding of willful infringement and its own finding that Life Fitness engaged in litigation misconduct. *Precor II*, slip op. at 4–6. The court then awarded attorney fees based on its finding of an exceptional case and the discretion to award fees provided by Washington State's unfair competition law. *Id.* at 6. The court determined Precor's attorney fees and costs and awarded Precor a little over $5 million in fees. The court did not differentiate between the fees and costs that were associated with the '826 design patent, the '207 patent, and the Federal and Washington State unfair competition claims.

Life Fitness appeals the district court's denial of its post-trial motions and the district court's award of attorney fees. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

II.

We review a district court's denial of a motion for JMOL *de novo*, reapplying the JMOL standard used by the district court. *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 963–64, 55 USPQ2d 1513, 1516 (Fed.Cir.2000). To prevail on a motion for JMOL, "an appellant must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal

---

1. Life Fitness does not appeal the jury's find- ing that it engaged in unfair competition.

conclusion(s) implied from the jury's verdict cannot in law be supported by those findings." *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.,* 150 F.3d 1354, 1358, 47 USPQ2d 1516, 1519 (Fed.Cir.1998). A factual finding is supported by substantial evidence if a reasonable jury could have found in favor of the prevailing party in light of the evidence presented at trial. *Tec Air, Inc. v. Denso Mfg. Mich. Inc.,* 192 F.3d 1353, 1358, 52 USPQ2d 1294, 1296 (Fed.Cir.1999). A review for substantial evidence involves an examination of the record as a whole, taking into consideration evidence that both justifies and detracts from the decision of the fact-finder. *Nat'l Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1192, 37 USPQ2d 1685, 1690 (Fed.Cir.1996). This court reviews a district court's denial of a motion for a new trial for abuse of discretion. *Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1067, 46 USPQ2d 1097, 1103 (Fed.Cir.1998).

The district court's determination of whether a case is exceptional is a factual determination reviewed for clear error. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1460, 46 USPQ2d 1169, 1178 (Fed. Cir.1998) (en banc). Upon a finding of an exceptional case, this court reviews a district court's decision to award attorney fees under 35 U.S.C. § 285 for an abuse of discretion. *Id.* An award of attorney fees under R.C.W. 19.86.090 based on a violation of Washington State unfair competition law is also reviewed for an abuse of discretion. *Travis v. Wash. Horse Breeders Assoc., Inc.,* 111 Wash.2d 396, 759 P.2d 418, 425 (Wash.1988).

### A. Infringement of the '826 Design Patent

In determining if a design patent is infringed, a court must first construe the design patent's claim. *Elmer v. ICC Fabricating, Inc.,* 67 F.3d 1571, 1577, 36 USPQ2d 1417, 1420 (Fed.Cir.1995). Next, the fact-finder must determine whether the accused design infringes the patent, first employing the ordinary observer test:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two design are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Mfg. Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871). The fact-finder is to determine whether "the patented design as a whole is substantially similar in appearance to the accused design." *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405, 43 USPQ2d 1641, 1647 (Fed.Cir.1997). "In determining this overall similarity of design, the ordinary observer must be deceived by the features common to the claimed and accused designs that are ornamental, not functional." *Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.,* 157 F.3d 1311, 1323, 48 USPQ2d 1099, 1107 (Fed.Cir. 1998). If the accused device is not substantially similar, the inquiry ends at the ordinary observer test, and the accused device does not infringe. If the accused design is overall visually similar to the patented design, the fact-finder then must conclude, in order to find infringement, that this similarity is based on the patented device's (1) points of novelty that distinguish it from the prior art and (2) ornamental, not functional, features. *Id.* at 1323–24. Infringement of a design patent is a question of fact. *See Shelcore, Inc. v. Durham Indus., Inc.,* 745 F.2d 621, 628–29, 223 USPQ 584, 590 (Fed.Cir.1984).

■ We find that the evidence presented below does not support a finding of a substantially similar overall visual impression between the '826 design patent and the FlexDeck. Nothing indicates that the

FlexDeck's similarities to the '826 design patent are due to the ornamental features claimed by the design patent. At the same time, Precor does not dispute the district court's claim construction of the '826 design patent, which indicates that there are four claimed ornamental design elements:

■ A center support column with *a ribbed front surface,* which column inclines at a shallow angle towards the rear of the machine;

■ An *asymmetrically* shaped center console located atop the center support column;

■ Hand rails which attach to the treadmill both (a) *at the front* of the center console atop the center support column; and (b) at approximately the midway point of the runaway frame;

■ A *rectilinear and asymmetrical* hood over the motor.

(emphasis added). The FlexDeck does not contain any of these claimed ornamental features.

The FlexDeck's center support column has a smooth front surface, while the '826 design patent's support column has a ribbed front surface. The FlexDeck's console is symmetrical about the support column, while the '826 design patent's console is asymmetrical. The FlexDeck's handlebars meet at the bottom-center of the console, while the '826 design patent claims handlebars that meet at the front of console. Finally, the FlexDeck's motor hood has smoothed, rounded edges and is symmetrical, in contrast to the '826 design patent's asymmetrical motor hood with rectilinear edges.

■ Precor presented evidence that the FlexDeck and the design claimed in the '826 design patent looked similar, but this evidence did not indicate that the similar appearance was due to the ornamental features claimed by the '826 design patent. For there to be a finding of infringement,

the ordinary observer test requires that the similarities found in the accused design be based on the ornamental aspects of the claimed design. *Unidynamics Corp.,* 157 F.3d at 1323, 48 USPQ2d at 1107. Precor also argues that it presented evidence of copying, which supports the jury's finding of infringement. However, none of the cited evidence indicates that the ornamental features of the '826 design patent were copied. Life Fitness's own internal documents indicate that Life Fitness attempted to copy non-ornamental, functional features of Precor's design such as the internal motor compartment assembly, the drive roller for the running surface, the treadmill's speed range, the number of handlebars, and the handlebar grips. Without any evidence to support a finding of substantial similarity based on the ornamental aspects of the '826 design patent's design, we must reverse the district court's denial of Life Fitness's motion for JMOL of non-infringement.

B. *Invalidity of Claim 37 of the '207 Patent*

■ For a claim in a later-filed application to be entitled to the filing date of an earlier application under 35 U.S.C. § 120, the earlier application must comply with the written description requirement of 35 U.S.C. § 112, ¶ 1. *Tronzo v. Biomet, Inc.,* 156 F.3d 1154, 1158, 47 USPQ2d 1829, 1832 (Fed.Cir.1998). To meet the requirements under § 112, ¶ 1, an earlier disclosure must reasonably convey to one of skill in the art that the inventor possessed the later-claimed subject matter at the time the parent application was filed. *Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563, 19 USPQ2d 1111, 1116 (Fed.Cir. 1991). Compliance with the written description requirement under 35 U.S.C. § 112, ¶ 1 is a question of fact. *Hyatt v. Boone,* 146 F.3d 1348, 1352, 47 USPQ2d 1128, 1130 (Fed.Cir.1998).

 Substantial evidence supports the jury's finding that the limitations in claim 37 are not supported by the June 1989 application. The district court construed claim 37 to require elastomeric support members to be "placed in line with" the treadmill's longitudinal support members and to be "situated between two extremes," *i.e.*, two pulleys. In addition, the court noted that the elastomeric support members must be "within the vertical space between the frame and the deck" of the treadmill and "permit said deck to bend enough to contribute significantly to the absorption of shock on a user's foot." While the June 1989 application describes an exercise treadmill with resilient support members that flex upon impact, it does not disclose, to someone skilled in the art, resilient members that are both "aligned with" the treadmill's longitudinal support members and "between said frame and said deck." Figure 3A in the June 1989 application discloses resilient members 100 and 102. Resilient members 102 do not support the elastomeric support members described in claim 37 because they are not "secured between said frame and said deck" 50, considering resilient members 102 are positioned outside the area covered by the deck 50. Resilient members 100, seen in figure 3B in the June 1989 application, are placed between the frame and the deck, but they are not "aligned with" the longitudinal support members 54 and 56, a limitation found in claim 37 of the '207 patent.

Life Fitness contends that resilient members 100 are "aligned with" longitudinal support members 54 and 56 because they parallel the longitudinal support members. But the resilient members 100 do not meet claim 37's "aligned with" limitation; they are not "placed in line with" the longitudinal support members 54 and 56. Longitudinal support members 54 and 56 define two lines that run along the side of the treadmill lengthwise, from the front

of the treadmill to its back. Resilient members 100 do not lie in line with the longitudinal support members 54 and 56. They are placed just to the left and just to the right of the lines created by the longitudinal support members 54 and 56.

In contrast, the alternative linkage assembly disclosed for the first time in the April 1991 application supports the elastomeric support members described in claim 37. Elastomeric support members 400, shown in figure 3D in the April 1991 application, are "mounted between the deck 50 and frame crossmember 402," '207 patent, col. 12, II. 52–54, and are "placed in line with" the longitudinal support members. Elastomeric support members 400 are on the same line that is formed by both longitudinal support members, a fact that is suggested in figure 3D. Elastomeric support members 400 are "aligned with" the longitudinal support members 54 and 56, while the resilient members 100 disclosed in the June 1989 application are not. In light of the subject matter disclosed in the June 1989 application and the limitations described in claim 37, substantial evidence supports the jury's verdict that there is no § 112, ¶ 1 support for claim 37 in the June 1989 application, and therefore claim 37 of the '207 patent is invalid. We therefore affirm the district court's denial of Life Fitness's motions for JMOL and a new trial on the issue of claim 37's priority date.

## C. *Award of Attorney Fees*

 A district court may "award reasonable attorney fees to the prevailing party" in an "exceptional" patent infringement case. 35 U.S.C. § 285. The prevailing party must prove the existence of an exceptional case by clear and convincing evidence, showing willful infringement; inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and

otherwise bad faith litigation; or a frivolous suit. *Hoffmann–La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365, 54 USPQ2d 1846, 1850 (Fed.Cir.2000). Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, by themselves, to make a case exceptional under § 285. *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574, 38 USPQ2d 1551 1557–58 (Fed. Cir.1996). Under R.C.W. 19.86.090, "any person who is injured in his or her business" by a violation of Washington State unfair competition law, "may bring a civil action ... to recover the actual damages sustained by him or her ... together with the costs of the suit, including a reasonable attorney's fee ...." A party who is successful on an unfair competition claim is entitled to fees under R.C.W. 19.86.090. *Travis*, 759 P.2d at 424.

The district court found this an exceptional case under 35 U.S.C. § 285 based on both the jury's finding of willfulness and Life Fitness's conduct during trial. *Precor II*, slip op. at 6. Since we have reversed the finding of infringement of the '826 design patent, the finding of willful infringement is also reversed, removing one of the considerations upon which the district court relied to conclude that this was an exceptional case. Because the district court cannot base its finding of an exceptional case on the jury's willfulness determination, we vacate the exceptional case finding and the resulting award of attorney fees and remand the issues to the district court. *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1459–60, 18 USPQ2d 1842, 1847–48 (Fed.Cir.1991). On remand, the court will have to determine whether the case still is exceptional under 35 U.S.C. § 285 and, if so, whether attorney fees should be awarded. *Id.* Section 285 allows a *prevailing party* to be eligible for attorney fees. *Id.* On remand, the district court will have to consider that Life Fitness is now the prevailing party on

the '826 design patent, while Precor is still the prevailing party on the '207 patent, when determining whether to award attorney fees and in any calculation of attorney fees. *See, e.g., Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553, 13 USPQ2d 1301, 1306–07 (Fed.Cir. 1989) (noting that fees should only be granted to the extent a party has prevailed); *see also Slimfold Mfg.*, 932 F.2d at 1459–60, 18 USPQ2d at 1848.

■■■ The district court also based its award of attorney fees to Precor on the jury's finding that Life Fitness engaged in unfair competition. *Precor II*, slip op. at 6. Therefore, even if the district court does not award Precor attorney fees pursuant to 35 U.S.C. § 285 upon remand, the district court can still award Precor attorney fees that are attributable to Precor's Washington State unfair competition claim, *Travis*, 759 P.2d at 425 (indicating that R.C.W. 19.86.090 only provides for fees that are linked to an unfair competition claim). Contrary to Life Fitness's arguments, the district court did not abuse its discretion in awarding attorney fees pursuant to R.C.W. 19.86.090. The jury found that Precor established, by a preponderance of the evidence, that Life Fitness was guilty of unfair competition under Washington State law, a finding that Life Fitness does not challenge on appeal. Under R.C.W. 19.86.090, a prevailing party on an unfair competition claim is entitled to reasonable attorney fees. Life Fitness argues that Precor was not a prevailing party on its Washington State unfair competition claim because the jury did not award Precor any damages on that claim. We reject this argument because R.C.W. 19.86.090 only requires a party to be injured to be entitled to attorney fees, not that the party recover monetary damages. *See, e.g., Nordstrom, Inc. v. Tampourlos*, 107 Wash.2d 735, 733 P.2d 208, 210–11 (Wash. 1987) (noting that R.C.W. 19.86.090 does not require proof of monetary damages).

CONCLUSION

We reverse the district court's denial of Life Fitness's motion for JMOL of non-infringement of the '826 design patent. The jury's finding of infringement is not supported by substantial evidence because Life Fitness's FlexDeck does not contain any of the ornamental features claimed by the '826 design patent. However, we affirm the district court's denial of Life Fitness's motion for JMOL that claim 37 of the '207 patent is entitled to the June 1989 application's filing date and therefore is not invalid. Substantial evidence supports the jury's finding that the June 1989 application does not support claim 37 because the June 1989 application does not disclose elastomeric support members that are both aligned with the treadmill's longitudinal support members and between the treadmill's frame and deck. Finally, we vacate the district court's award of attorney fees and remand to the district court for reconsideration of its fees award in light of our reversal of the jury's finding of infringement of the '826 design patent.

No costs.