Michael L. McGINLEY, Plaintiff,

v.

FRANKLIN SPORTS, INC., Defendant.

No. 98–2225–JWL.

United States District Court,
D. Kansas.

March 20, 2002.

Karen D. Renwick, Thomas V. Bender, Kip D. Richards, Walters, Bender, Strohbehn & Vaughan, P.C., Kansas City, MO, for Michael L McGinley.

Thomas A. Sheehan, Joseph B. Bowman, Shana J. Long, Daniel P. Devers, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Franklin Sports Inc.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Michael L. McGinley charged defendant Frankin Sports, Inc. ("Franklin") with willful infringement of claims 1, 2, 6 and 7 of U.S. Patent No. 5,407,193 ("the '193 patent"). Plaintiff's patent has been found to be valid and infringed by the Franklin Pitch Ball Trainer 2705 ("the 2705 ball") sold by defendant. *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1358 (Fed.Cir.2001). Plaintiff now seeks damages, including profits that it alleges it lost as a result of defendant's infringing sales of the 2705 ball. The matter comes before the court on defendant's motion for partial summary judgment on damages (Doc. 248). Specifically, defendant argues that plaintiff's damages should not include lost profits and, instead, should be limited to a reasonable royalty because the Franklin Pitch Ball Trainer 2707 ("the 2707 ball") was an acceptable noninfringing substitute. Defendant's motion is denied because genuine issues of material fact exist as to whether the 2707 ball was an acceptable noninfringing substitute.

## I. Uncontroverted Facts

The uncontroverted facts of the case are set out in the United States Court of Appeals for the Federal Circuit order of August 21, 2001, *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1358 (Fed.Cir. 2001), and the court will assume the parties knowledge of the history of the case. Defendant's papers only advance arguments regarding its motion for partial summary judgment on damages, therefore, the court will only summarize the facts relevant to the issue of lost profit damages.

The issue of lost profit damages revolves around the sale by plaintiff and defendant of three different models of regulation baseballs with finger placement marks used to teach students how to hold a baseball correctly when throwing different pitches. Plaintiff sold the Roger Clemens Instructional Baseball ("the RCIB"), a ball that was protected by the '193 patent. Defendant sold the 2705 ball, an infringing ball, from 1995 through 2001. Defendant also sold the 2707 ball, a ball found not to infringe claims 1, 2, 6 and 7 of the '193 patent by this court in its order dated November 23, 1999, starting in 1999.

In the United States Court of Appeals for the Federal Circuit order of August 21, 2001, *McGinley*, 262 F.3d at 1339, the court provides a detailed description and illustration of the RCIB. The 2705 ball includes a number of sets of finger placement marks. Each set of marks is color coded, and includes two finger marks and a thumb mark that are shaped in the form of finger outlines. The user places two of

his or her fingers on two of the shaped marks and places his or her thumb on the corresponding thumb mark to learn each of the grips on the 2705 ball. The 2707 ball is identical to the 2705 ball except that the marks on the ball are circular in shape rather than shaped as finger outlines.

According to defendant, it began taking steps to introduce the 2707 ball in the summer of 1998 and started selling the 2707 ball in January of 1999. Defendant voluntarily chose to replace the 2705 ball with the 2707 ball and did so without first submitting the redesigned product to its customers for their input. The 2707 ball was developed and manufactured in the same manner as the 2705 ball. Plaintiff questions whether defendant started selling the 2707 ball in January, citing testimony from Rich Ferenz, defendant's Vice President of Sales where he stated that defendant did not begin selling the 2707 ball until the "spring of 1999."[1] The controverted fact is not material to the outcome of this motion but, of course, the evidence will be viewed in the light most favorable to the nonmoving party, the plaintiff.

According to defendant, total sales of the 2707 ball in 1999 were 232,562 units compared to sales of 187,356 units for the 2705 ball in 1998.[2] During that time, the two balls sold for the same price and had the same cost structure. Plaintiff alleges, however, that sales of the 2707 ball decreased in 2000 and 2001. In contrast, the number of RCIB's sold by plaintiff during 1999, 2000 and 2001 increased dramatical-

---

**1.** Plaintiff also argues that the court should disregard this evidence because defendant did not provide plaintiff with the documents from which the 2707 summary sheet attached to Defendant's Supplemental Discovery Responses was compiled.

**2.** Plaintiff contends the court should disregard this evidence because defendant did not

provide plaintiff with the documents from which the summaries attached to Defendant's Supplemental Discovery Responses were compiled. Moreover, plaintiff alleges that defendant changed some of the numbers shown on the summaries without explanation, and only after inquiry by plaintiff. Nonetheless, the dispute regarding this fact is not material to the resolution of this motion.

ly. Plaintiff provides evidence that Wal–Mart continues to select and purchase the RCIB over the 2707 ball and sales of the RCIB at Wal–Mart have increased from 11,000 units in 1999 to 80,000 units in 2001. Plaintiff also provides evidence that Hibbetts Sporting Goods and KB Toys have selected the RCIB over the 2707 ball. Finally, plaintiff alleges that since the introduction of the 2707 ball, at least two major retailers, Toys–R–Us and Ames Department Stores, have dropped or intend to drop the 2707 ball and Ames is now buying the RCIB from plaintiff.

According to plaintiff, when defendant developed the infringing 2705 ball in 1991, defendant was aware of certain patents and what it calls "prior art submissions" that utilized round fingertip marks yet defendant rejected the use of such marks and chose to develop the 2705 ball which utilized shaped finger marks like those on the RCIB. According to plaintiff, at the time defendant developed the 2705 ball, defendant recognized the need for shaped finger marks to indicate the orientation of the ball within the palm of the hand and defendant realized such orientation could not be accomplished by using thumb and finger marks.

Plaintiff alleges that defendant "substituted" and "reworked" the 2705 ball for the 2707 ball in 1999, despite testimony from defendant to the effect that it was no longer selling the 2705 ball. Plaintiff also claims that it purchased 2705 balls in 2000 and 2001, some of which were marked as 2707 balls, with the last one being purchased at a local Toys–R–Us store as recently as October of 2001. According to plaintiff, defendant did not disclose that it had "substituted" and "reworked" the 2705 ball for the 2707 ball in 2000 and 2001 until after defendant questioned plaintiff's initial set of Supplemental Discovery Responses.

Plaintiff and defendant are the only suppliers of a baseball used as a training aid that makes use of shaped and color-coded finger marks to teach the correct grips for throwing several different pitches on a single baseball. By the same token, the RCIB and the 2705 ball are the only types of these products that have been on the market since 1995. Before defendant marketed the 2707 ball in 1999, there was no baseball used as a training aid, to the parties knowledge, that made use of circles or dots to teach the correct grip for throwing several different pitches on a single baseball.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, the movant may simply point out to the court a lack of evidence for the other party on an essential element of that par-

ty's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

■ Once the movant has met this initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III. Discussion

Plaintiff seeks compensatory damages for defendant's acts of willful infringement under 35 U.S.C. § 284, including damages based on lost profits. Plaintiff also seeks injunctive relief, enhanced damages, interest and reasonable attorneys' fees under 35 U.S.C. § 284 and 285 due to defendant's acts. Plaintiff seeks the profits lost between April 18, 1995 and April 30, 1998 while USA Products was selling the RCIB and the profits that plaintiff has lost since May 1, 1998, and will lose in the future for products sold through SC Products. Finally, plaintiff seeks lost profits in the form of price erosion arguing that it would have been able to charge higher prices for the RCIB if defendant had not infringed.

Defendant moves for summary judgment with regard to plaintiff's claim for lost profits arguing that plaintiff's damages should be limited to a reasonable royalty. Specifically, defendant argues that plaintiff is not entitled to lost profits, as a matter of law, because the 2707 ball was an available and acceptable noninfringing substitute for the RCIB within

the meaning of the four part *Panduit* test. The court does not agree.

■ Upon proof of infringement, 35 U.S.C. § 284 provides that "the court shall award [the patent owner] damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by infringer." The phrase "damages adequate to compensate" means "full compensation for 'any damages' [the patent owner] suffered as a result of the infringement." *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 654, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983). "Full compensation includes any foreseeable lost profits the patent owner can prove." *Grain Processing Corp. v. American Maize–Products Co.,* 185 F.3d 1341, 1349 (Fed.Cir.1999) (citing *Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1545–47 (Fed.Cir.1995)(en banc)).

■ "To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Tate Access Floors, Inc. v. Maxcess Technologies, Inc.,* 222 F.3d 958, 971 (Fed.Cir.2000) (citing *Rite–Hite,* 56 F.3d at 1545). "A useful, but non-exclusive, way for a patentee to prove entitlement to lost profits is provided by the four-factor *Panduit* test, which 'requires that the patentee establish: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capabilities to exploit the demand; and (4) the amount of the profit it would have made.'" *Id.* (quoting *Rite–Hite,* 56 F.3d at 1545)(citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978)).

■ "A showing under *Panduit* permits a court to reasonably infer that the

lost profits claimed were in fact caused by the infringing sales, thus establishing a patentee's *prima facie* case with respect to 'but for' causation." *Rite–Hite*, 56 F.3d at 1545 (citing *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed.Cir.1991))[3]. "A patentee need not negate every possibility that the purchaser might not have purchased a product other than its own, absent the infringement." *Id.* "The patentee need only show that there was a reasonable probability that the sales would have been made 'but for' the infringement." *Id.* "When the patentee establishes the reasonableness of this inference, *e.g.*, by satisfying the *Panduit* test, it has sustained the burden of proving entitlement to lost profits due to the infringing sale." *Id.* Once the patentee provides evidence of a reasonable probability of 'but for' causation, "[t]he burden then shifts to the infringer to show that the inference is unreasonable for some or all of the lost sales." *Id.; see also Grain Processing Corp.*, 185 F.3d at 1345.

■ In the instant action, defendant argues that plaintiff should be precluded, as a matter of law, from recovering lost profits because plaintiff cannot satisfy the second prong of the *Panduit* test. Defendant claims that the 2707 ball was an acceptable noninfringing substitute. According to defendant, the demand for the 2707 ball in 1999 was nearly identical to the demand for the 2705 ball the previous year. Moreover, according to defendant, the 2707 ball is produced by the same process, at the same cost and sold at the same price as the RCIB.

Plaintiff does not dispute that the 2707 ball was available. Plaintiff does, however, dispute that the 2707 ball is an acceptable substitute for the RCIB. First, plaintiff argues that the issue is a question of fact to be decided by a jury. Second, plaintiff alleges there is ample evidence for a reasonable jury to conclude that the 2707 ball is not an acceptable substitute. Plaintiff provides evidence that sales of the 2707 ball decreased in 2000 and 2001 while the number of RCIBs sold during the same period increased significantly. Plaintiff argues that defendant's ability to sell the 2707 ball stems from prior sales of the 2705 ball. In fact, plaintiff alleges that two major retailers, Toys–R–Us and Ames Department Stores, have dropped or intend to stop carrying the 2707 ball and Ames is now buying the RCIB from plain-

---

**3.** Citing the Federal Circuit's pronouncement in *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed.Cir.1991), plaintiff points out that the "same inference" can also arise when "the patentee and the infringer are the only suppliers present in the market." In such a case, the court stated that it "is reasonable to infer that the infringement probably caused the loss of profits." *Id.* This conclusion is not the end of the analysis, however, when the infringer has another product it alleges was available. In *Grain Processing*, 185 F.3d at 1349, the district court stated that because the plaintiff and the defendant "competed head-to-head as the only significant suppliers of" the product at issue consumers would purchase the patented product if the infringing product were not available. The court added, however, that because the infringer proved that it had another noninfringing product that

was available and that the product was an acceptable substitute for the patented product, the infringer could not prove lost profits. *Id.*

In this case, defendant does not dispute plaintiff's factual contention that plaintiff and defendant were the only two suppliers of a baseball pitching training product of the kind at issue here. Instead, defendant argues that its other product, the 2707 ball, was an available and acceptable noninfringing substitute that it would have marketed instead of the infringing 2705 ball. Therefore, in order for plaintiff to recover lost profits, it must present evidence that defendant did not have an available product that was an acceptable noninfringing substitute for the patented product. Namely, plaintiff must provide evidence that the 2707 ball was not an available and acceptable noninfringing substitute for the RCIB.

tiff. Also, Wal–Mart continues to select the RCIB over the 2707 ball and sales of the RCIB have increased from approximately 11,000 units in 1999 to over 80,000 in 2001. Similarly, Hibbetts Sporting Goods and KB Toys have selected the RCIB over the 2707 ball. Plaintiff contends that the decrease in sales in 2000 and 2001 shows that the 2707 is not an acceptable substitute.

In addition to the sales figures evidence, plaintiff argues that the 2707 ball does not have the same attributes as the RCIB. Plaintiff contends that the 2707 ball, with its round fingertip marks, is no substitute for a ball with shaped finger marks because the shape of the marks serves to "orient" the ball within the palm of the hand for each of the different pitches shown. The 2707 ball does not inform the user how to position the product within the hand and actually serves to confuse the consumer, particularly when the consumer is a child. Plaintiff provides declarations from Brent Strom [4], the Kansas City Royals pitching coach, Mel Stottlemeyer [5], the New York Yankees pitching coach and Tom Urquhart [6], a former major league pitcher, stating that the 2707 ball is not an adequate substitute for the RCIB because the directional finger marks on the RCIB are critical for knowing how to hold the baseball correctly. In sum, plaintiff con-

tends that the directional finger marks on the RCIB are a key physical attribute that the 2707 ball lacks.

This case presents a situation very similar to the circumstances in *Grain Processing*. 185 F.3d at 1353. The patentee has its product, the RCIB, and the infringer has two products: the infringing product, the 2705 ball, and another product, the 2707 ball, that was available during the infringing period and does not infringe on the patented product, but, for whatever reason, the infringer chose not to put the noninfringing product on the market during a significant portion of the period of infringement.

■ Applying the "but for" inquiry, through the *Panduit* test, "requires a reconstruction of the market, as it would have developed absent the infringing product, to determine what the patentee would . . . have made." *Grain Processing Corp.*, 185 F.3d at 1350. The court in *Grain Processing* explained that "an alleged substitute not 'on the market' or 'for sale' during the infringement can figure prominently in determining whether a patentee would have made additional profits 'but for' the infringement." *Id.* at 1349. "[T]o be an acceptable non-infringing substitute, the product or process must have been available *or* on the market at the time of

---

**4.** Mr. Strom's declaration taken in the Spring Summer of 2000 states: "Learning the art of pitching is already difficult enough without the kids guessing which direction to grip the ball. Anyone who knows anything about pitching can easily see the benefit of having the directional finger marks rather than the circular marks."

**5.** Mr. Stottlemeyer's declaration taken in the Spring Summer of 2000 states: "I am always supportive of what is best for the kids. The Roger Clemens' ball has the finger marks that show exactly which direction to grip the ball. Clemens' booklet also gives more detailed instruction. The other product [the 2705 ball] leaves too much to guesswork."

**6.** Mr. Urquhart's declaration taken in the Spring–Summer of 2000 states: "I teach over 4,000 pitching lessons to some 700 students every year and use the Roger Clemens Instruction Baseball for instruction. I really feel bad for anyone who buys Franklin's [2707] Pitch Trainer. Without having shaped finger marks like those on the Clemens' ball, how are the kids going to know which direction to place their fingers? [Franklin's] booklet certainly doesn't help. Unfortunately, most individuals won't figure this out until they have already made the mistake of purchasing Franklin's ball."

infringement." *Id.* Consequently, as the court explained in *Grain Processing,* the issue is whether the noninfringing product was an available and acceptable substitute for the patented product. *Id.* at 1353.

■ Plaintiff does not dispute that the 2707 ball was available, as that term is used in applying the "but for" inquiry. Thus, the issue is whether the 2707 ball was an acceptable substitute. The issues of availability and acceptability are questions of fact, typically left for a jury to decide. *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1577 (Fed.Cir.1992) ("The existence of a non-infringing substitute [under the *Panduit* test] is a question of fact...."); *Scripto–Tokai Corp. v. Gillette Co.,* 788 F.Supp. 439, 445 (C.D.Cal.1992) (holding that the issue of whether acceptable, noninfringing substitutes existed and were available was a question of fact to be decided at trial). The issue for the court on defendant's motion for summary judgment, therefore, is whether plaintiff has put forth specific facts that would be admissible in evidence at trial from which a reasonable jury could find that the 2707 ball was not an acceptable substitute for the RCIB ball.

■ "The mere existence of a competing device does not necessarily make that device an acceptable substitute." *Stryker Corp. v. Intermedics Orthopedics, Inc.,* 96 F.3d 1409, 1418 (Fed.Cir.1996); *see also TWM Mfg. Co. Inc. v. Dura Corp.,* 789 F.2d 895, 901 (Fed.Cir.1986). To be an acceptable substitute, the purported substitute "must not have a disparately higher price than or possess characteristics different from the patented product." *Kaufman Co.,* 926 F.2d at 1142. A "product on the market which lacks the advantage of the patented product can hardly be termed an acceptable substitute." *Stryker Corp.,* 96 F.3d at 1418; *see also TWM Mfg. Co.,* 789 F.2d at 901. In *Grain Processing,* 185

F.3d at 1355, the court explained that "[c]onsumer demand defines the relevant market and relative substitutability among products therein." *Id.* (citations omitted). "Important factors shaping demand may include consumers' intended use for the patentee's product, similarity of physical and functional attributes of the patentee's product to alleged competing products, and price." *Id.* (citations omitted).

In this case, plaintiff has come forth with sufficient evidence from which a reasonable jury could conclude that the 2707 ball was not an acceptable noninfringing substitute for the RCIB. While defendant points out that consumers intend to use the 2707 ball and the RCIB for the same purpose, to learn to throw different pitches, and the two different baseballs sell for approximately the same price, plaintiff has provided evidence, in the form of declarations and other evidence, that the round fingertip marks on the 2707 ball are confusing and less effective than the shaped finger marks on the RCIB. Thus, there is evidence that the physical and functional attributes of the RCIB are distinct from the 2707 ball.

Moreover, plaintiff has provided economic data from 2000 and 2001 supporting its theory that the 2707 ball is not an acceptable substitute. Although defendant provided evidence that the 2707 ball sold as well in 1999 as the 2705 ball sold in 1998, plaintiff provides evidence that sales of the 2707 ball tapered off in 2000 and 2001 while sales of the RCIB increased significantly. Viewing the evidence in the light most favorable to the plaintiff, the court concludes that a reasonable jury could find that the 2707 ball sold well in 1999 because defendant had previously sold the 2705 ball but as time passed, sales tapered off as suppliers switched to the RCIB. This theory is supported by plaintiff's evidence that several large retailers

have recently switched from carrying the 2707 ball to carrying the RCIB. In sum, plaintiff's evidence is sufficient to create a genuine issue of material fact as to whether the 2707 ball is an acceptable noninfringing substitute. The issue must be decided at trial by a jury.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for partial summary judgment on damages (Doc. 248) is denied.